## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM P. MILLER,** | ) | **Case No. 3:20-cv-88** |
| | ) | |
| Plaintiff, | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| v. | ) | |
| | ) | |
| **ANDREW M. SAUL, Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff William P. Miller appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court finds that the Commissioner's decision should be **AFFIRMED**.

### I.     Procedural History

On April 27, 2015, Miller filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of September 30, 2013.[1] (R. 15). Miller's application was initially denied on September 3, 2015. (R. 15). An Administrative Law Judge ("ALJ") held a hearing on September 26, 2017. (R. 15). On August 9, 2018, the ALJ held a supplemental video hearing. (R. 15). The ALJ issued a decision ("Decision") on

---

[1] Miller initially alleged an onset date of December 13, 2012 but subsequentially amended the alleged onset date to September 30, 2013. (R. 234).

January 15, 2019, finding that Miller was not disabled. (R. 12–34). On March 10, 2020, the Appeals Council denied Miller's request for review of the ALJ's Decision. (R. 1–6).

## II.     Issues

Miller presents the following issues for review:

1.     Whether the ALJ abused her discretion by re-opening the record after the first hearing to obtain additional vocational evidence, sua sponte, when there were no new issues or evidence presented or raised at the time of the September 26, 2017 hearing in this matter;

2.     Whether the ALJ abused her discretion in having a new vocational expert testify at the time of the second hearing, without explanation why Mr. [Mark] Heckman was not available for cross[-]examination; and

3.     Whether the ALJ erred in basing her determination on the testimony of Mr. [Jonathan] DeLuna, who was not qualified to testify as a vocational expert, and who[se] opinions were contrary to the [Dictionary of Occupation Titles] regulation[s], without explanation.

(ECF No. 19 at 10).

## III.     Discussion

### a.  Standard of Review

This Court's review is limited to a determination of whether the Commissioner's Decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014). "The Commissioner's findings of fact are binding if they

are supported by substantial evidence." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Rels. Bd.*, 305 U.S. 197, 229 (1938)). Substantial evidence "is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Zirnsak*, 777 F.3d at 610 (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). The Court "review[s] the record as a whole to determine whether substantial evidence supports a factual finding." *Id.* (quoting *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Finally, the Court "review[s] the ALJ's application of the law de novo." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007).

### b. Evaluation Process

The ALJ evaluates disability claims according to a sequential five-step process. 20 C.F.R. § 404.1520(a)(4). "First, the Commissioner considers whether the claimant is 'engaging in substantial gainful activity.'" *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1520(a)(4)(i)). If the claimant is engaging in substantial gainful activity, then the claimant is not disabled. *Id.* "Second, the Commissioner considers the severity of the claimant's impairment(s)." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(ii). If at step two "the claimant's impairment(s) are either not severe or do not meet the duration requirement, the claimant is not disabled." *Id.* "Third, the Commissioner considers whether the claimant's impairment(s) meet or equal the requirements of one of the Commissioner's listed

impairments." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). If at step three "the claimant's impairment(s) meet [or exceed] the requirements of a listed impairment, then the claimant is disabled." *Id.*

If the claimant's impairments do not meet or exceed a listed impairment "then the inquiry proceeds to the fourth step, where the Commissioner considers whether the claimant can return to her past work." *Id.* In determining whether the claimant can perform past relevant work, the claimant's residual function capacity ("RFC") is assessed. *Id.* "A claimant's RFC measures 'the most [she] can do despite [her] limitations.'" *Id.* (quoting 20 C.F.R. § 404.1545(a)(1)) (alterations in original). In assessing the claimant's RFC, the "Commissioner examines 'all of the relevant medical and other evidence' to make its RFC determination." *Id.* (quoting 20 C.F.R. § 404.1545(a)(3)). If the claimant can perform past relevant work, then the claimant is found to be not disabled. *Id.* The claimant bears the burden of satisfying the first four steps by a preponderance of the evidence. *Id.*

At step five, "the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Id.* at 612 (citing 20 C.F.R. § 404.1520(a)(4)(v); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). To meet this burden, "the Commissioner must produce evidence that establishes that 'work exists in significant numbers in the national economy that [the claimant] can do.'" *Id.* (quoting 20 C.F.R. § 404.1560). The Commissioner uses the RFC, as well the testimony of vocational experts and specialists, to establish that work exists in significant numbers in the national economy that the claimant is capable of performing. *Id.* "[E]ntitlement to benefits is dependent upon

finding the claimant is incapable of performing work in the national economy." *Id.* (internal

quotation marks omitted).

### c. The ALJ's Evaluation of Miller

In the present case, the ALJ found that Miller "did not engage in substantial gainful

activity during the period from his amended onset date of September 30, 2013 through his

date last insured of December 31, 2018." (R. 18). At step two, the ALJ found that Miller

"had the following severe impairments: major depressive disorder, anxiety disorder, and

adjustment insomnia." (R. 18). Further, the ALJ found that these "medically determinable

impairments significantly limit the ability to perform basic work activities." (R. 18). At step

three, the ALJ found that "[t]hrough the date last insured, [Miller] did not have an

impairment or combination of impairments that met or medically equaled the severity of

one of the listed impairments." (R. 19).

The ALJ found that Miller has the RFC "to perform medium work[,] . . . except he

can understand, remember, and carry out simple instructions and make simple work-

related decision. He can sustain an ordinary routine without special supervisions." (R. 21).

Further, Miller "can tolerate a low level of work pressure defined as work not requiring

multitasking, detailed job tasks, significant independent judgment, a production-rate pace,

teamwork in completing job tasks, or contact with the public. [Miller] can tolerate

occasional interaction with coworkers and supervisors. He can tolerate occasional changes

in work setting." (R. 21).

At step four, the ALJ determined that, "[t]hrough the date last insured, [Miller] was

unable to perform any past relevant work." (R. 26). Finally, at step five the ALJ determined

that, "[t]hrough the date last insured, considering [Miller]'s age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Miller] could have performed. (R. 26). Accordingly, the ALJ found that Miller "was not under a disability . . . at any time from December 13, 2012, the alleged onset date, through December 31, 2018, the date last insured. (R. 28).

### d. Analysis

#### i. Reopening the record to obtain additional evidence was not reversible error

Miller first contends that it was error for the ALJ to hold a supplemental video hearing on August 9, 2018, after the initial hearing on September 26, 2017. (ECF No. 19 at 10–19). The Commissioner responds that Miller's assertion of error is without merit and that Miller had the opportunity to cure any perceived error. (ECF No. 23 at 10–11).

The Court finds the supplemental hearing is not reversible error. In the Notice of Hearing dated May 31, 2018, for the August 9, 2018, hearing, Miller was informed that if he "object[ed] to the issues or remarks" contained in the hearing, he was to inform the ALJ in writing no later than five days before the scheduled hearing. (R. 169). The Commissioner asserts and Miller does not contest that he "made no objection." (ECF No. 23 at 4). Based upon the Commissioner's argument that Miller could have cured any perceived error, the Commissioner appears to be arguing that Miller failed to exhaust this issue at the administrative level. However, "neither [the Third Circuit] nor the Supreme Court have recognized an issue exhaustion requirement in Social Security cases. *Tymiak v. Comm'r Soc.*

*Sec.*, 844 F. App'x 537, 543 (3d Cir. 2021). Accordingly, the Court declines to find the issues raised are barred because of a failure to exhaust.

There is the "well-established (in this Circuit and elsewhere) obligation of an ALJ to develop the record during an adjudicative hearing." *Rutherford v. Barnhart*, 399 F.3d 546, 556 (3d Cir. 2005). The Social Security Administration's regulations provide that an ALJ "may reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence. The [ALJ] may decide when the evidence will be presented and when the issues will be discussed." 20 C.F.R. § 404.944. "However, administrative hearings are subject to requirements of due process. *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 385 (D.N.J. 2013). Therefore, "the ALJ must afford the claimant not only an opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports when such cross-examination is necessary to the full presentation of the case, and must reopen the hearing for that purpose if requested." *Wallace v. Bowen*, 869 F.2d 187, 193 (3d Cir. 1989).

In this case, Miller contends that the ALJ violated this regulation. (ECF No. 19 at 10–14). It appears to the Court that Miller makes two arguments with respect to this alleged error. First, Miller contends that because no new medical evidence was presented at the September 26, 2017 hearing, it was error for the ALJ to send the Vocational Expert ("VE") additional written hypotheticals after the conclusion of the hearing. The Commissioner responds that Miller "is under the mistaken belief that only he could provide new and material evidence. The plain language of the regulations, however, provides it is within the ALJ's discretion to consider post-hearing submissions." (ECF No. 23 at 10). The Court

agrees with the Commissioner, there is no language in the regulation limiting the submission of new evidence to the claimant. Further, the regulation provides that it is the ALJ who may reopen the record, as well determe what issues will be discussed and when that evidence will be presented. 20 C.F.R. § 404.944. To the extent Miller is arguing that the ALJ did not receive new evidence, that argument is not supported by the record. The ALJ asked additional hypotheticals of the VE and heard additional VE testimony.

Second, Miller contends that the ALJ's reopening the record through promulgating two hypotheticals to the VE violated HALLEX I-2-5-30. The "Hearings, Appeals and Litigation Law manual . . . provides the format and guidance for those who prepare HALLEX material [and] conveys guiding principles, procedural guidance, and information to hearing level and Appeals Council staff. HALLEX defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels." HALLEX I-1-0-1. Even assuming the ALJ violated HALLEX, such a violation is not reversible error. "HALLEX is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members." *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000). Further, "HALLEX provisions . . . lack the force of law and create no judicially-enforceable rights." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007); *See Grimm v. Colvin*, No. 1:14-CV-1614-TFM, 2015 WL 5123700, at *5 (W.D. Pa. Sept. 1, 2015) (stating "the HALLEX is an internal guidance tool with no legal force and, as such, it is not judicially enforceable or binding on the Social Security Administration"). Accordingly, the Court finds that the ALJ did not commit reversible error in reopening the record and conducting a supplemental hearing on August 9, 2018.

### ii. A new VE testifying at the supplemental hearing was not reversible error

Miller next contends that the ALJ erred by having a new VE, not the VE who testified at the initial hearing or to whom the additional hypotheticals were directed, testify at the supplemental hearing. (ECF No. 19 at 14–16). Miller argues that it was reversible error for the VE Mark Heckman, to whom the supplemental hypotheticals were promulgated, to not be available for cross-examination at the supplemental hearing.[2] (*Id.*). Miller further argues that the ALJ violated the HALLEX by having the different VEs participate in this matter. (*Id.* at 16). The Commissioner responds that Miller objected to the written response to the hypotheticals, those objections were sustained, and VE Heckman's answers to the hypotheticals were not made a part of the record. (ECF No. 23 at 11–12).

The Court finds that it was not reversible error for a different VE to provide his opinion at the supplemental hearing. First, Miller's objection to the hypotheticals posed to VE Heckman, without the opportunity to cross-examine VE Heckman, was sustained and answers to the hypotheticals were stricken from the record. (R. 341). Accordingly, because the objection was sustained and VE Heckman's answers to the hypotheticals were stricken from the record, there was no error in holding the supplemental hearing without VE Heckman being available. Second, to the extend Miller's argument is based upon the HALLEX, the Court has already addressed above that the HALLEX lacks the force of law and does not create substantive rights.

---

[2] Miller also argues that there were discrepancies between the opinions of the two VEs that the ALJ did not resolve, as well as challenging the qualifications of the VE Jonathan DeLuna. The Court will address this argument in the discussion of Miller's final allegation of error.

Finally, Miller provides no authority, binding or persuasive, for the proposition that it is reversible error for different VEs to participate in the administrative proceedings. Miller appears to be arguing that the sole reason for the supplemental hearing was because the ALJ was unsatisfied with the testimony of VE Heckman. However, Miller "provides no evidence to support his argument that the ALJ sought testimony from a second vocational expert merely because the ALJ was dissatisfied with the testimony VE # 1 provided at the . . . hearing." *McConnell v. Astrue*, No. EDCV 08-667 JC, 2010 WL 1946728, at *4 (C.D. Cal. May 10, 2010). Further, the summary of the supplemental hearing reflects that the ALJ . . . considered the record inadequate to allow for proper evaluation of the evidence." *Id.* Additionally, "there is no evidence that the use of a different vocational expert at the [supplemental] hearing was anything other than a consequence of" VE Heckman's unavailability. *Id.* Accordingly, the Court finds it was not error for a different VE to provide evidence at the supplemental hearing.

### iii. The ALJ did not err in her consideration of VE DeLuna's testimony

Finally, Miller raises several errors relating to VE DeLuna's testimony. First, Miller contends that there was unresolved conflict between the testimony of the different VEs. (ECF No. 19 at 16). Miller identifies conflicting testimony between the VEs "about whether work was available to the claimant when asked hypothetical questions." (*Id.* at 17). Further, Miller takes issue with a portion of the supplemental hearing not being recorded. (*Id.*). The Commissioner responds that there is no conflict between the testimony of the VEs. (ECF No. 23 at 12). The Court finds there was not an unresolved conflict between the testimony of the VEs. At Miller's request, the two hypotheticals asked of VE Heckman after the initial

hearing were stricken from the record.[3] (R. 341). Further, at the supplemental hearing, there were two hypotheticals asked of VE DeLuna. Neither of these hypotheticals was asked of VE Heckman at the initial hearing. Accordingly, the Court is unable to find an unresolved conflict between the testimony of the two VEs.

As to the issue of the missing transcript, the ALJ promptly informed Miller, through his counsel, of the recording issue. (R. 341). Miller declined a supplemental hearing to rectify the recording issue and instead requested a summary of the missing testimony. (R. 341). In summarizing the missing testimony, the ALJ informed Miller that, if no objections to the summary were received, the ALJ would assume there were no additional submissions. (R. 343). There is no indication in the record and Miller does not argue that he had any objection to the ALJ's summary of the missing testimony. Accordingly, the Court finds that the ALJ's summary is properly a part of the record. *See* HALLEX I-2-6-46 (providing that "if the claimant (or representative, if any) does not respond to the ALJ's request by the specified date and the correspondence was not returned as undeliverable, the ALJ may presume there is no objection and admit the summary into the record").

Next, Miller objects to VE DeLuna's qualifications. (ECF No. 19 at 18). Miller contends that because the portion of the supplemental hearing addressing VE DeLuna's qualifications is missing, his credentials are not part of the record. (*Id.*). The Commissioner responds that the ALJ and Miller's counsel thoroughly questioned VE De Luna about his training and experience. (ECF No. 23 at 12). Further, VE DeLuna's resume is part of the

---

[3] The Commissioner contends that the testimony between the two different VEs "was somewhat consistent." (ECF No. 23 at 12 n.9).

record. (*Id.*). The Court finds that, contrary to Miller's argument, VE DeLuna's credentials are part of the record. First, the ALJ summarized the missing portion of the questioning of VE DeLuna's credentials. (R. 342). Second, Miller's counsel thoroughly probed VE DeLuna during the supplemental hearing. (R. 42–55). Third, VE DeLuna's resume is part of the record. (R. 332-33). Further, the ALJ considered and overruled Miller's objections to VE DeLuna. Based on the evidence before the Court in the administrative record, including the unchallenged summary of the portions of the supplemental hearing that were not recorded, the Court finds no evidence in the record that the ALJ erred in her assessment of VE DeLuna's qualifications.

Finally, Miller asserts that VE DeLuna's testimony conflicted with the DOT and this conflict was not resolved by the ALJ. (ECF No. 19 at 18–20). Specifically, Miller argues that two of the three occupations identified by VE DeLuna require a higher level of reasoning than the ALJ found Miller capable of in the RFC determination. (*Id.* at 19). The Commissioner responds that there is not a conflict between the testimony of VE DeLuna and the DOT. (ECF No. 88 at 12–13). Further, the Commissioner contends that, even if there was an unresolved conflict, such error was harmless because at least one of the occupations identified by VE DeLuna requires the reasoning Miller contends he is capable of, satisfying the Commissioner's burden at step five.

The Court finds that any error in not resolving the apparent conflict between the jobs VE DeLuna identified and the DOT was harmless. VE DeLuna identified three jobs that Miller was capable of performing: (1) Laundry Worker, with approximately 289,000 jobs in the national economy; (2) Industrial Street Sweeper, with approximately 1,000,000

jobs in the national economy; and (3) Groundskeeper, with approximately 270,000 jobs in the national economy. (R. 27). Miller contends that due to the reasoning limitation found in the ALJ's RFC determination, he is incapable of performing the work required as a groundskeeper and laundry worker. (ECF No. 19 at 20). Accepting Millers argument, the Court finds any error was harmless.

Miller does not challenge VE DeLuna's conclusion that he is capable of performing the work required as an industrial street sweeper. Further, there are approximately 1,000,000 industrial street sweeper jobs in the national economy. In *Cosme v. Comm'r Soc. Sec.*, the Third Circuit found that "200,250 jobs nationally" was sufficient to conclude that "[s]ubstantial evidence exists that there is a significant number of jobs in one or more occupations in the national economy" that the claimant could perform. 845 F. App'x 128, 135 (3d Cir. 2021). Here, there are approximately five times the number of jobs in the national economy as an industrial street sweeper than were found to be sufficient in *Cosme*. *Id.* Miller does not challenge the conclusion he is capable of performing the job of an industrial street sweeper. Accordingly, any error in not resolving the alleged conflict between the testimony of VE DeLuna and the DOT was harmless and the jobs available in the nation economy is sufficient "to uphold the ALJ's decision." *Id.*

## IV.  Conclusion

Based on the foregoing, the Court finds that the Commissioner's decision should be affirmed. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM P. MILLER,** | ) | Case No. 3:20-cv-88 |
| | ) | |
| Plaintiff, | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| v. | ) | |
| | ) | |
| **ANDREW M. SAUL, Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

### <u>ORDER</u>

**AND NOW**, this ___24th___ day of June, 2021, upon consideration Plaintiff's Motion for Summary Judgment and brief in support (ECF Nos. 18, 19) and Defendant's Motion for Summary Judgment and brief in support (ECF Nos. 22, 23), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment (ECF No. 18) is **DENIED. IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**